Curia, per O’Neall, J.
The case of Helton vs. Caston, 2 Bail. 95, notices and- considers very fully the ground on which I place this case.
Slaves, although chattels personal, cannot in every respect be treated by the rules which apply to and govern personal estate. They are human beings, with passions and feelings like our own, and with the same capability of right and wrong action. They,'if in a state of nature, would have the right of self-protection, which is given by the great Creator to every human being. Their transfer from a state of nature *85 to a state of slavery in society, has not destroyed the right of. personal protection; it has taken it from the slave and given it to the master.
The right of protection of the slave being in the master, the question naturally arises, is that transferred in a contract of hiring ? To answer it we must examine the nature and effect of such a contract. It is for á limited time and for the services of the slave. This'is the extent of the hirer’s interest; the owner parts with none of the incidents of property, except that for a time he has appointed the services of a slave to be rendered to another. I have always thought there was ¦more analogy to slaves in-the rules of law applicable to land, than was to be found in the law of personalty.
In the case of real estate, the owner may grant an easement, as a right of way, and if the grantee or another dig up the soil, .be may maintain trespass. For the easement created does not take away the owner’s legal interest in the soil. So in the case of hiring a slave, the hirer acquires a right to his services for .a limited period, but the general interest and rights of property, not inconsistent with the contract of hiring, remain in the owner. If an act be done not affecting the services of the slave, nor disturbing the possession of. the hirer, be cannot claim reparation for an injury, for he has sustained none. But if the act, notwithstanding, it does not produce injury to the hirer, be such an one,'as the battery of the slave, for which the master, if be bad not hired the slave, might maintain trespass, then I apprehend, on the principle derived from the analogy of an easement, the owner may, notwithstanding the hiring, recover in this form of action.
But the case need not rest on any such analogy. It has been decided that the right of personal protection belongs to the master. By that I understand that the master has all the means of protecting bis slave in a civil point of view, which the slave, if a freeman would have. He may justify a battery for the protection of bis slave, from an unlawful attack on bis person.' If the slave was a freeman, notwithstanding be bad hired bis services to another, be might maintain trespass against any one who should beat him during bis term of service. This is necessary for .the protection of the person of a freeman, who might strike in defence of himself— much more is it necessary that it should exist for the protection *86 of one whose bands are tied by bis position in society. This being so, the conclusion must be, that as the slave, if a freeman, could maintain trespass for a battery committed by a third person upon him, while his services were hired to another, that the master may- also maintain the same action.
The relative duties and rights of the slave, the hirer and the master, may more appropriately be deduced from the law of master and apprentice than any'other. A slave hired owes to his hirer the same duties which an apprentice does to his master — and the hirer has the same rights and powers to and over the slave, which the master has to and over the apprentice. Like the apprentice, by the appointment of his master’s contract, he is to serve the hirer for a limited time, and to obey his commands; if he fail in either of these duties, the hirer, like the master of an apprentice, may moderately correct him. But if a third person should beat an apprentice, there is no doubt that he might maintain trespass for the injury done to his person, and the violation of his right of personal protection. If the beating should produce loss of service to the master, he also might maintain his action of trespass per quod servüum amisit. In the case of a hired slave, the same thing must occur. The master by hiring has given to another the right to his services, and the power to coerce service and obedience, by moderate correction. If a third person beat the slave, his right of personal protection, which is in the master, has been violated by a forcible act, and hence the master may have trespass for it. If the hirer also sustains injury by the loss of service, he may, on his actual possession, have his action of trespass per quod servüum amisit.
These views, I think, fully sustain the' legal character of the action.
They are also consistent with good policy. Slaves are our most valuable property. For its preservation, too many guards cannot be interposed between it and violent unprincipled men. In the relation of master and servant, the dependence of the latter on the former alone for protection, cannot be too much encouraged. The slave ought to be fully aware that Ms master is to him what the best administered government is to the good citizen, a perfect security from injury. When this is the case, the relation of master and servant becomes little short of that of parent and child— *87 it. commences in the weakness of the one and the strength of the other. Its benefits produce the corresponding consequence of deep and abiding grateful attachment from the slave to the master — and hence result those striking instances of devotion, which, at least on one (occasion in this State, induced a slave to peril his life to save that of his master, and failing in the attempt, nobly to perish with him.
The motion is dismissed.